Donald WILMOT, Plaintiff-Respondent and Cross-Appellant,

v.

RACINE COUNTY, Defendant-Appellant,

The TOWN OF CALEDONIA, Wausau Mutual Insurance Company, a domestic insurance corporation, Harvey Shebesta and John White, Defendants-Respondents and Cross-Respondents,

MILWAUKEE AREA TRUCK DRIVER'S HEALTH & WELFARE FUND & EXPRESS TRUST, Defendants-Respondents,

Harold M. MOKRY, Defendant.†

Court of Appeals

*No. 84–1753. Submitted on briefs August 15, 1985.— Decided December 4, 1985.*
(Also reported in 382 N.W.2d 442.)

† Petition to review granted.

For the plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *Robert E. Hankel* of *Schoone, Mc Manus, Hankel, Ware & Fortune, S.C.,* of Racine.

For the defendant-appellant the cause was submitted on the briefs of *Mark Janiuk,* of Racine.

For the defendants-respondents and cross-respondents Town of Caledonia and Wausau Mutual Insurance Company the cause was submitted on the briefs of *Law Offices of Straub & Schuch,* with *Gregg T. Heidenreich* of counsel, of Milwaukee.

For the defendants-respondents and cross-respondents Harvey Shebesta and John White the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Richard J. Boyd,* assistant attorney general of counsel, of Madison.

For the defendant-respondent the cause was submitted on the briefs of *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C. by Daniel E. Goldberg* and *Hope K. Olson,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J. Racine County (the County) appeals from a judgment affirming a jury verdict in favor of Donald Wilmot (Wilmot). Wilmot cross-appeals the jury's finding of no negligence on the part of the Town of Caledonia (the Town), Harvey Shebesta (Shebesta), and John White (White). Because the jury's verdict was sustained by the evidence, because the trial court properly instructed the jury, and because the trial court did not err in ruling that both Wilmot and his subrogated medical insurance carrier, the Milwaukee Area Truck Driver's Health and Welfare Fund and Express Trust (the Health Fund), could separately recover up to the municipal liability limit, we affirm the trial court's judgment. Because the Town was not a negligent volunteer, because Shebesta and White did not breach their nondelegable ministerial duties, and because the trial court properly refused to allow Wilmot to amend his complaint after the verdict, we reject Wilmot's cross-appeal.

In the early morning hours of Saturday, June 19, 1982, Town of Caledonia police were notified that a stop sign was missing at the intersection of Highway 38 and 7-Mile Road in the Town. Highway 38 is a state trunk highway; 7-Mile Road is a Town road. The Town police placed a temporary stop sign on 7-Mile Road facing eastbound traffic and notified the Racine County Sheriff's Department of that fact. The sheriff's department, however, decided not to notify the Racine County Highway Department until the following Monday. The

142

sheriff's department based this decision on its assumption that, because the state Department of Transportation allegedly would not pay overtime, the County Highway Department would not be able to put up a permanent sign until the next Monday.

At about 4:30 p.m. on Sunday, June 20, 1982, the sheriff's department received an anonymous telephone call that the temporary stop sign kept tipping over. The dispatcher merely told the investigating sheriff to see if the sign was knocked down. Because the stop sign was upright when the sheriff drove past, the sheriff took no further action.

Thirty minutes later, the accident occurred. Harold M. Mokry (Mokry) was driving east on 7-Mile Road. As he approached the intersection of 7-Mile Road and Highway 38, he saw no stop sign. Mokry proceeded through the intersection and struck Wilmot's car. Wilmot sustained personal injuries.

Wilmot sued Mokry and his insurer, the County, Racine County Sheriff Robert Rohner, the Town and its insurer, Shebesta and White. The latter two parties were sued in their capacities as supervisory employees of the state Department of Transportation. The Health Fund was added as a subrogated party to Wilmot's claim. Sheriff Rohner was dismissed prior to trial pursuant to the parties' stipulation. Mokry's insurer settled with Wilmot and was released before trial. The parties also stipulated that the Health Fund's subrogated interest was to be determined by the court after trial.

At trial, the jury found Mokry to be seventy-five percent causally negligent, the County to be twenty percent causally negligent, and Wilmot to be five per-

cent causally negligent. The jury found the Town, She-besta and White not negligent.

The trial court denied the County's motions after verdict and granted judgment to Wilmot in the amount of $50,000, plus costs, and to the Health Fund in the amount of $25,171.[1] The County appeals.[2] Wilmot cross-appeals.

The County first argues that it was not negligent as a matter of law because it did not breach any duty. It claims that its liability, if any, arises out of and is controlled by the terms of its oral contract with the state pursuant to sec. 84.07(1), Stats. The County contends that it complied with its contractual duties by erecting a temporary stop sign and notifying the state of the downed sign on the next working day. It asserts that it had no further responsibility to maintain the stop sign. There is no merit to the County's argument.

The state Department of Transportation has the primary responsibility for maintaining the state trunk highway system.[3] Pursuant to sec. 84.07(1), Stats., the

---

[1] This amount represents the medical payments the Health Fund made on Wilmot's behalf, less Wilmot's five percent contributory negligence.

[2] The judgment against Mokry is not a subject of this appeal.

[3] Sec. 84.07(1), Stats., states in pertinent part:

**Maintenance of state trunk highways.** (1) . . . The state trunk highway system shall be maintained by the state at state expense. The department [of transportation] . . . may contract with any county highway committee or municipality to have all or certain parts of the work of maintaining the state trunk highways within or beyond the limits of the county or municipality, . . . performed by the county or municipality, and any county or municipality may enter into such contract. General maintenance activities include . . . interim repair of highway surfaces and adjacent structures,

state can contract with a county highway committee or municipality to perform certain maintenance on state trunk highways within the county limits.[4] Such maintenance includes "interim repair of highway surfaces and adjacent structures, . . . [and] all measures deemed necessary to provide adequate traffic service."[5]

Although there was no written contract between the state and the County, testimony was given as to an oral agreement for the maintenance of stop signs. Shebesta, White and the Racine County Highway Department supervisor, Robert Hetzel, all testified that the state and County agreed that the County would erect temporary stop signs and notify the state of the need for a permanent stop sign. In addition, Hetzel, White, and Sergeant Knoll testified that prior to the accident the County normally replaced permanent stop signs during off-duty (weekend) hours.

Where facts allegedly giving rise to a legal duty are not in dispute, the question of the existence of a duty is a question of law.[6] We do not defer to the trial court's determination on questions of law.[7]

and all other operations, activities and processes required on a continuing basis for the preservation of the highways on the state trunk system, and including . . . all measures deemed necessary to provide adequate traffic service.

[4] *Id.*

[5] *Id.*

[6] *Johnson v. Misericordia Community Hosp.,* 99 Wis. 2d 708, 723, 301 N.W.2d 156, 164 (1981); *Toeller v. Mutual Serv. Casualty Ins. Co.,* 115 Wis. 2d 631, 635, 340 N.W.2d 923, 925 (Ct.App. 1983).

[7] *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

We conclude that the County had a duty to maintain the temporary stop sign under the terms of its oral contract with the state. In addition, once the Town notified the County that a temporary sign had been erected, the County then assumed the responsibility to replace the temporary sign with a permanent one.[8] It was foreseeable by the County that a motor vehicle accident would happen at the intersection if it failed to replace the stop sign.

We thus reject the County's argument that it was not negligent as a matter of law. We will not set aside a jury's finding of negligence when the record contains any credible evidence that under any reasonable view supports the verdict.[9] Because the facts adequately support the verdict, we affirm the jury's finding that the County was negligent.

The County next claims that the trial court erroneously instructed the jury that the County had an absolute duty to construct permanent signs without undue delay pursuant to the state Department of Transportation's Manual for Uniform Traffic Control Devices. The County misreads the jury instruction. State statutes require that each community using state signs comport with the mandate of the state Manual for Uniform Traffic Control Devices.[10] The instruction does not state that a county is required in an emergency to replace downed signs with permanent ones, but rather states that "[p]ortable or part-time stop signs shall not

---

[8] Because the Town delegated its volunteered duty to the County, the Town is not liable as a volunteer, as Wilmot argues.

[9] *Toeller, supra* note 6, at 640, 340 N.W.2d at 927.

[10] *See* secs. 84.02(4)(e) and 349.065, Stats.

146

be used except for emergency purposes." The instruction therefore did not impose an absolute duty on the County to replace a downed sign with a permanent one.

The County finally argues that the trial court erred in ruling that both Wilmot and the Health Fund could separately claim up to $50,000 against the County under sec. 893.80, Stats., which limits tort damages against a municipality.[11] The County asserts that since the Health Fund's claim is derivative, only Wilmot should be allowed to recover from the County. We disagree.

In interpreting a statute, we look first to the language of the statute.[12] If that language is clear, we must follow it and cannot look to legislative history for guidance.[13] The clear language of sec. 893.80(3), Stats., states that "[t]he amount recoverable *by any person* for any damages, injuries or death in any action founded on tort against any . . . governmental subdivision . . . shall not exceed $50,000 . . . ." (Emphasis added). "Person" as defined in sec. 990.01(26), Stats., "includes all partnerships, associations and bodies politic or corporate." As a legal entity, the Health Fund is clearly a "person" for the purposes of sec. 893.80(3).

Merely because the Health Fund's claim derives from Wilmot's does not preclude the Health Fund from

---

[11] Sec. 893.80(3), Stats., provides in pertinent part: "The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . governmental subdivision . . . shall not exceed $50,000 . . . ."

[12] *Ball, supra* note 7, at 538, 345 N.W.2d at 394.

[13] *Wisconsin Elec. Power Co. v. Public Serv. Comm'n,* 110 Wis. 2d 530, 534, 329 N.W.2d 178, 181 (1983).

separately recovering its subrogated medical expenses payment from the County. Our supreme court has held that although a husband's claim for medical expenses and loss of consortium is derivative from his wife's personal injury claim under the predecessor to sec. 893.80(3), Stats., the two claims are separate and distinct, and each person may recover up to the municipal statutory liability limits.[14] Under this rule, the trial court properly decided that Wilmot and the Health Fund may each recover up to $50,000 from the County under sec. 893.80(3).

On cross-appeal, Wilmot first claims that the Town, Shebesta and White were negligent as a matter of law. Second, Wilmot asserts that the trial court erred in refusing to permit him to amend his complaint after the verdict to include the theory of *respondeat superior.* We reject both arguments.

Wilmot initially claims that when the Town volunteered to put up a temporary stop sign, it had the duty to exercise reasonable care to put up an adequate sign and had additional duties to maintain and monitor the sign. A governmental body assuming the duty to erect an emergency stop sign becomes a volunteer having the duty to maintain the erected sign properly for the protection of the traveling public.[15] A person volun-

---

[14] *Schwartz v. City of Milwaukee,* 54 Wis. 2d 286, 295, 195 N.W.2d 480, 485 (1972) (construing sec. 895.43(2), Stats. (1971), which is identical to present sec. 893.80(3), Stats., except for a liability limit of $25,000).

[15] *Firkus v. Rombalski,* 25 Wis. 2d 352, 358, 130 N.W.2d 835, 838 (1964).

teering to do an act has the duty to do so carefully.[16] Appellate review of jury findings is limited to whether the record contains any credible evidence that under any reasonable view supports the verdict and removes the issue from the field of conjecture.[17] We view the evidence in the light most favorable to the verdict, especially where the verdict has the support of the trial court.[18]

The trial court instructed the jury on the continuing maintenance duty of a volunteer, and the special verdict asked whether the Town was negligent in failing to perform its assumed duty. The record contains credible evidence to sustain the jury's decision that the Town was not negligent. We affirm its finding.

As to Shebesta and White, the state employees, Wilmot argues that they are liable as government officials for failing to perform their ministerial, nondelegable duties. In support of his argument Wilmot points to Shebesta's and White's testimony at trial. Both testified that it was their ultimate duty to maintain state stop signs in Racine county, that they never developed written procedures for the County to follow in replacing missing signs, and that they neither supervised the County's replacement of stop signs nor told the County what type of sign to use. Wilmot mistakes the nature of Shebesta's and White's duties.

■ There is nothing in the state Manual for Uniform Traffic Control Devices giving these two employees

---

[16] *Wulf v. Rebbun,* 25 Wis. 2d 499, 503, 131 N.W.2d 303, 306 (1964).

[17] *Fantin v. Mahnke,* 113 Wis. 2d 92, 97, 334 N.W.2d 564, 567 (Ct.App. 1983).

[18] *Id.*

ministerial duties regarding the replacement of the stop signs. Ministerial duties of a government official are mandatory, imposed by law, and require no judgment and discretion.[19] The manual does not mandate that the state develop written procedures for the County to replace stop signs nor that the state investigate temporary signs. There is no other statutory provision requiring Shebesta and White to perform these tasks. Because Shebesta and White had no ministerial duties, they are not liable for allegedly failing to perform them.

Wilmot argues that the evidence at trial showed that the County had an agency relationship with Shebesta and White. In particular, Wilmot points to Shebesta's and White's testimony that the County was their agent and asserts that the trial court erred in refusing to allow him to amend his complaint after the verdict to include the theory of *respondeat superior.* We disagree.

This case was tried on the theory of negligence, not agency liability. The record reflects that the evidence at trial did not establish that the County was a servant of the state, much less that the County was the servant of Shebesta and White. Wilmot failed to prove that Shebesta and White had the right to control the County's conduct.[20] Wilmot cannot rely on these two employees' bare assertions in lieu of proving the elements of agency liability, particularly since Shebesta and White were laymen not cognizant of the legal meaning

[19] *Hjerstedt v. Schultz,* 114 Wis. 2d 281, 285, 338 N.W.2d 317, 319 (Ct.App. 1983) (citation omitted).

[20] *See Arsand v. City of Franklin,* 83 Wis. 2d 40, 45–46, 264 N.W.2d 579, 582 (1978) (citation omitted).

of agency. Their opinions that the County was their agent do not conclusively establish agency. Once the case was tried and submitted to the jury on a theory of negligence, it would have been improper for the trial court to decide the case on a theory of *respondeat superior*,[21] especially since agency was neither argued to the jury nor included in the instructions.

For the foregoing reasons, we affirm the verdict and the trial court's rulings in all respects.

*By the Court.*—Judgment affirmed.

---

[21] *See Reiter v. Dyken,* 95 Wis. 2d 461, 468–69, 290 N.W.2d 510, 514 (1980).