Donald WILMOT, Plaintiff-Respondent and Cross-Appellant and Cross-Petitioner,

v.

RACINE COUNTY, Defendant-Appellant-Petitioner,

The TOWN OF CALDEDONIA, Wausau Mutual Insurance Company, a domestic insurance corporation, Harvey Shebesta and John White, Defendants-Respondents and Cross-Respondents,

MILWAUKEE AREA TRUCK DRIVER'S HEALTH & WELFARE FUND and Express Trust, Defendants-Respondents,

Harold M. MOKRY, Defendant.

Supreme Court

*No. 84–1753. Argued November 24, 1986.—Decided February 13, 1987.*

(Also reported in 400 N.W.2d 917.)

For the defendant-appellant-petitioner there were briefs by *Joan M. Korb* and *Racine County Corporation Counsel*, Racine, and oral argument by *Joan M. Korb*.

For the plaintiff-respondent and cross-appellant and cross-petitioner there was a brief by *Robert E. Hankel* and *Schoone, McManus, Hankel, Ware & Fortune, S.C.*, Racine, and oral argument by *Robert E. Hankel*.

For the defendants-respondents there was a brief by *Daniel E. Goldberg, Hope K. Olson* of the firm of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee and oral argument by *Daniel E. Goldberg*.

WILLIAM G. CALLOW, J. This is a review of a published decision of the court of appeals, *Wilmot v. Racine County*, 128 Wis. 2d 138, 382 N.W.2d 442 (Ct. App. 1985), affirming a judgment of the circuit court for Racine county, Judge James Wilbershide, which

allowed separate recoveries up to the governmental liability limit by David Wilmot and his subrogee, the Milwaukee Area Truck Driver's Health and Welfare and Express Trust. The issue on review is whether an injured party and his or her subrogee may recover separately up to the governmental liability limit provided by sec. 893.80(3), Stats. Because we find that a subrogee's rights are not separate from those of the subrogor, we conclude that sec. 893.80(3) does not permit a subrogee and subrogor to recover separately. We therefore reverse the decision of the court of appeals.

On June 20, 1982, Donald Wilmot (Wilmot) suffered injuries as a result of an automobile accident. The details of the accident are not relevant to the determination of the issue on review and, therefore, we omit them. Pursuant to a health and welfare insurance plan, Milwaukee Area Truck Driver's Health and Welfare Fund and Express Trust (Health Fund) made payments totaling $26,496.63 to cover the medical expenses incurred by Wilmot as a result of the accident. Because of these payments, the Health Fund became subrogated to Wilmot's claim for damages.[1] On February 7, 1983, Wilmot commenced an

---

[1]According to the pleadings, the policy under which the Health Fund paid Wilmot's medical expenses provides, in pertinent part:

"In the event that hospital, medical, dental, pharmaceutical or optical services is [sic] furnished to you or your dependents . . . and such service is necessitated by reason of the negligence of another, the Cooperative shall be subrogated to you or your dependents' right of recovery against persons or organizations responsible for the act which results in the furnishing of such services and may recover the reasonable charge for service so given. Neither you nor your dependents shall do any act to jeopardize such right."

action against the driver of the other automobile (Mokry) and his insurer, American Family Mutual Insurance Company, Racine county, Racine county Sheriff Robert Rohner, the Town of Caledonia and its insurer, Wausau Mutual Insurance Company, Harvey Shebesta, John White, and the Health Fund.

The Health Fund was named as defendant in the action because of its subrogated interest arising out of medical payments made for the benefit of Wilmot. However, Wilmot and the Health Fund stipulated that the interest of the Health Fund in any recovery made by Wilmot was excluded as an issue at trial and was to be determined by the trial court following the trial of the negligence action. Furthermore, Sheriff Rohner was dismissed as a party prior to trial pursuant to the parties' stipulation. Mokry's insurer settled with Wilmot and was released before trial.

A jury trial was held in which Mokry was found 75 percent causally negligent, Racine county 20 percent causally negligent, and Wilmot 5 percent causally negligent. The jury found no negligence on the part of the Town of Caledonia, John White, and Harvey Shebesta. The jury further found that $125,000 would properly compensate Wilmot for his personal injuries. Additionally, the court determined that Wilmot sustained $29,773.62 in medical expenses and $51,206.30 in past loss of earnings.

The trial court, in denying a series of motions made by Racine county, refused to limit Racine county's aggregate liability to Wilmot and the Health Fund to a total of $50,000, pursuant to sec. 893.80(3), Stats.[2] Instead, the court granted judgment to Wilmot

---

[2]Section 893.80(3), Stats., provides, in pertinent part:

against Racine County in the amount of $50,000, plus costs, and to the Health Fund against Mokry and Racine County in the amount of $25,171.70, plus costs.[3] All claims against Harvey Shebesta, John White, the Town of Caledonia, and Wausau Mutual Insurance Company were dismissed.

The court of appeals affirmed the judgment of the circuit court. The court's decision, regarding the extent of Racine county's liability, was based upon the court's interpretation of the "plain language" of sec. 893.80(3), Stats., which limits the amount recoverable by "any person" against a governmental subdivision to $50,000. The court of appeals noted that this court had held that, although a husband's claim for medical expenses and loss of consortium is derivative from his wife's personal injury claim under the predecessor to sec. 893.80(3), the two claims are separate and distinct, and each may recover up to the governmental statutory limits. *Wilmot*, 128 Wis. 2d at 148. According to the court, because the Health Fund constituted a person under the statutes, the Health Fund was entitled to recover separately its subrogated medical expenses from Racine County. *Id.* at 147–48. On March 21, 1986, this court granted Racine county's petition for review.

"The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any ... political corporation, governmental subdivision or agency therof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000."

[3]The Health Fund's award of $25,171.70 represents the medical payments made by the Health Fund on Wilmot's behalf, less Wilmot's 5 percent contributory negligence.

In granting Racine county's petition, we limited our review to whether the court of appeals erred in ruling that Wilmot and the Health Fund could recover separately up to $50,000 against Racine county under sec. 893.80(3), Stats. Our determination of this issue involves the construction of a statute in relation to a particular set of facts and is thus a question of law. *State v. Nordness*, 128 Wis. 2d 15, 24, 381 N.W.2d 300 (1986). Accordingly, we need not defer to the decisions of the lower courts. *Id.*

Under sec. 893.80(3), Stats., "[t]he amount recoverable by any person for any damages, injuries or death in any action founded on tort against any ... governmental subdivision ... shall not exceed $50,000." This court has previously interpreted this section as applying the statutory limitation "to each person asserting a cause of action for damages regardless of whether the cause of action is separate and independent or separate but derivative." *Schwartz v. Milwaukee*, 54 Wis. 2d 286, 295, 195 N.W.2d 480 (1972). Furthermore, in *Wood v. Milin*, 134 Wis. 2d 279, 285, 397 N.W.2d 479 (1986), we stated: "It is clear from [the above passage in *Schwartz*] that separateness of the causes of action for damages was key to the court's interpretation of the statute." It is therefore necessary to find separate causes of action before parties asserting claims against a governmental subdivision may recover separately up to the statutory limit provided in sec. 893.80(3).

It is not enough, as the Health Fund argues, to find that each entity claiming against a government subdivision is "a person" under the law. *Schwartz* and *Wood* make it clear that not only must each claimant be "a person" but that each claimant must also have a

separate cause of action, be it independent or derivative.

The Health Fund contends that, by virtue of its interest as a subrogee, it may recover separately against Racine county under sec. 893.80(3), Stats. We recognize that the Health Fund is "a person" under the statute. Thus, the dispositive question is whether the Health Fund, as a subrogee, has a separate cause of action, be it independent or derivative.

We have previously held that under subrogation a subrogee succeeds to the legal rights or claims of another (subrogor). *See Garrity v. Rural Mutual Insurance Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977). Thus a subrogee is one who steps into the shoes of the subrogor to the extent it has made payment as a result of the actionable event. However, subrogation confers no greater rights on the subrogee than the subrogor had at the time of the subrogation. *Id.* Accordingly, the identity of a cause of action is not changed by the subrogation, and no new cause of action is created thereby. *See* 16 *Couch on Insurance 2d* sec. 61:37 (Rev. ed. 1983). Thus, where one acquires a right by subrogation, that right is not a separate cause of action from the right held by the subrogor. We conclude, therefore, that the subrogated interest of the Health Fund does not constitute a separate cause of action.

We note that this court in *Heifetz v. Johnson*, 61 Wis. 2d 111, 120, 211 N.W.2d 834 (1973), characterized the interests of a subrogor and subrogee as "[e]ach actually own[ing] separately a part of the liability of the tort-feasor." Although such language might suggest that a subrogee's claim constitutes a separate cause of action for the purposes of sec. 893.80(3),

Stats., the *Heifetz* court further noted that "it is better to think of the insurer as an assignee of *part of the claim.*" *Id.* (emphasis added). We agree with this latter characterization of the insurer's interest as that of the owner of a part of the claim. However, as noted earlier, sec. 893.80(3) requires that the person bringing the action against the governmental subdivision be the owner of a separate cause of action. *See Wood*, 134 Wis. 2d at 285. It is clear that one who owns only a part of a claim does not own a separate cause of action from the owner of the other part of the claim. Thus, a subrogee, as an owner of only part of a claim, may not recover separately under sec. 893.80(3). Because the claims of Wilmot and the Health Fund are not separate causes of action, sec. 893.80(3) limits the aggregate recovery by Wilmot and the Health Fund against Racine county to $50,000.

The court of appeals' reliance upon our conclusion that a husband may recover for medical expenses and loss of consortium was in error because this court has recognized that the husband has a legal obligation to pay medical expenses[4] and that the loss of consortium is his separate loss.[5] Unlike a spouse who has a separate but derivative cause of action for medical expenses and loss of consortium, the claim of a subrogee, while derivative, is not separate.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the

---

[4]*See Seitz v. Seitz*, 35 Wis. 2d 282, 295–96, 151 N.W.2d 86 (1967); *In Matter of Estate of Stromsted*, 99 Wis. 2d 136, 144, 299 N.W.2d 226 (1980).

[5]*Peeples v. Sargent*, 77 Wis. 2d 612, 643, 253 N.W.2d 459 (1977).

circuit court for proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the result the majority reaches, but I disagree with the majority's reliance on the cause of action concept. This court has never clearly indicated what it means by "cause of action" in the context of the statute limiting municipal tort liability[1] and has, in its prior opinions, adopted a more helpful method of analysis that is masked by its use of the cause of action language. I write separately to set forth the analysis that I think the court has effectively employed and should continue to employ when faced with the question of calculating the amount of damages a person is entitled to recover under sec. 893.80(3), Stats.

The place to begin is with the words of sec. 893.80(3). The statute simply limits to $50,000 "[t]he

---

[1]"Cause of action" is already a heavily burdened concept that must perform many tasks in various contexts. What constitutes a cause of action may depend on the purpose for which the concept is invoked. As the United States Supreme Court has said,

> "A 'cause of action' may mean one thing for one purpose and something different for another .... At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed. This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed." *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67–68 (1933). See also *Davis v. Passman,* 442 U.S. 228, 237–40 (1979).

amount recoverable by any person for any damages, injuries or death in any action founded on tort against" a municipality. The statute uses the word "action," not the phrase "cause of action," and not the phrase "a person who has a cause of action." The question in this case is whether the insurance company is a person seeking to recover damages in an action founded on tort against a municipality.

The use of the cause of action concept to interpret sec. 893.80(3) can be traced to *Schwartz v. Milwaukee*, 54 Wis. 2d 286, 195 N.W.2d 480 (1972). In that case the court held that a husband suing for loss of consortium resulting from the wife's personal injuries in an automobile accident could recover damages up to the statutory limit, while his wife could also recover damages up to the statutory maximum for her personal injuries suffered in an automobile accident. In reaching this conclusion the *Schwartz* court said that it would "apply the $25,000 limitation to each person asserting a cause of action for damages regardless of whether the cause of action is separate and independent or separate and derivative as a split-off of another cause of action." 54 Wis. 2d at 295. This is the language from *Schwartz* that appears in *Wood v. Milin*, 134 Wis. 2d 279, 285, 397 N.W.2d 479 (1986), where it is characterized as the "key to the court's interpretation of the statute." Quoted with approval at slip opinion at page 62.

The *Schwartz* court, however, appears to have rejected the notion that the statute should be interpreted by resorting to the niceties of a cause of action analysis. Immediately preceding the cause of action language quoted above, the *Schwartz* court said: "No doubt these sections [imposing a limitation on recovery from a municipality] could have been written so

the limitation would apply to a cause of action and encompass within one limitation the split-off causes for consequential damages. The present broad language of these sections does not seem to reach that result. ... These statutes refer to the amount each person is limited in his recovery, not to how many injuries, accidents or causes of action." 54 Wis. 2d at 295.

The analysis the court actually undertook in *Schwartz* was to examine the nature of the husband's consortium interest for which he sought compensation. 54 Wis. 2d at 293. As a later case put it, "loss of consortium is a direct injury to the spouse who has lost the consortium." *Peeples v. Sargent*, 77 Wis. 2d 612, 643, 253 N.W.2d 459 (1977). Accordingly the husband and wife were both persons seeking to recover damages for a direct invasion of each of their legally recognized interests in an action founded on tort against a municipality. Both the husband and wife could recover up to the statutory maximum.[2]

The majority attempts to determine whether the insurance company's claim in this case constitutes a cause of action which is separate from the insured's

---

[2]Since *Schwartz* was decided, other cases inquiring into the nature of loss of consortium have abjured *Schwartz's* use of the concept of cause of action and fine distinctions between derivative, independent, and separate causes of action. In *White v. Lunder*, where this court had to decide whether under the comparative negligence statute a husband's recovery for loss of consortium and medical expenses would be discounted not only by his negligence but also by his wife's negligence, this court noted that the cases discussing the nature of a claim for loss of consortium were "confusing." *White v. Lunder*, 66 Wis. 2d 563, 574, 225 N.W.2d 442 (1975). See also *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 316, 294 N.W.2d 437 (1980).

claim.[3] Nevertheless, the majority does not define cause of action and must in the end rely on an interest analysis.[4] The interest analysis in this case is, however, buried in the discussion of the separate cause of action concept.

The majority resolves this case by building upon the *Heifetz* case which described the insurance company subrogee as "an assignee of part of a claim."[5] The majority moves from this description to the conclusion that "one who owns only part of a claims does not own a separate cause of action from the owner of the other

---

[3]The majority uses the terms "claim" and "cause of action" throughout its opinion. This court described "claim for relief" as the substantial equivalent of "cause of action" in *Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis. 2d 536, 556, 327 N.W.2d 55 (1982). The majority does not explain its use of these terms. For a discussion of the two terms, see Wright, Miller & Cooper, *Federal Practice and Procedure, Civil* secs. 1216, 4407 (1981).

[4]In *Wood v. Milin*, this court decided that joint tenants suing a municipality for damage to their property held in joint tenancy were each entitled to separate damage limitations. Although the court made reference to the separate cause of action analysis, it never defined cause of action, but rather, in my opinion, rested its conclusion that each joint tenant could recover the maximum statutory limit on an analysis of the interests of the joint tenants. The court said, "Essentially each has a cause of action for damages because *the real interests of each have been damaged.* The fact that Elaine and Walter Wood joined their claims in prosecuting this suit in no way affects the fact that they *each have an interest which has been damaged." Wood v. Milin*, 134 Wis. 2d 279, 284, 397 N.W.2d 479 (1986) (emphasis added).

[5]61 Wis. 2d 111, 211 N.W.2d 834 (1973). In describing the insurance company as an assignee of part of a claim, the *Heifetz* court was contrasting the insurance company's interest with that of a joint owner of a claim. "Thus it is better to think of the insurer as an assignee of part of the claim than to speak of the insured and the insurer as joint owners of the claim." 61 Wis. 2d at 120.

part of the claim." Majority opinion page 64. The majority then holds, on the basis of there being no "separate cause of action," that the insured and the insurance company are one person for purposes of sec. 893.80(3). The majority fails to explain why the insurance company and the insured are treated as two persons having separate fates in litigation in *Heifetz* and *Lambert*,[6] even though they have only one cause of action, and are treated as one person in this case, with one cause of action, sharing a common fate for purposes of sec. 893.80(3).

The results in the *Heifetz* and *Lambert* cases and in this case can be explained satisfactorily through an analysis of the interests of the insured and the insurance company in the context of the issues involved in each case.

The insured's claim is based on the municipality's breach of a duty of due care which interfered with the insured's interests in person and property. The insurance company's claim, on the other hand, rests on the doctrine of subrogation. The purpose of subrogation is to prevent the insured from being unjustly enriched. Under the doctrine of subrogation the insurance company, the subrogee, steps into the shoes (in whole or in part) of the insured and receives all or part of the money that would go to the insured in the absence of subrogation.

As the majority points out, "subrogation confers no greater rights on the subrogee than the subrogor had at the time of the subrogation." Majority opinion page 63. This court has explained that the subrogee succeeds only to the rights of the insured as follows:

---

[6]*Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987).

"Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. ... Subrogation has also been described as putting one to whom a particular right does not legally belong in the position of the legal owner of the right. Insofar as a new right is created in favor of the subrogee, 'the original right measures the extent of the new right.'" *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977) (citations omitted).

Applying this analysis of the interests of the insured and the insurance company, this court held in *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973), among other things, that although the statute of limitations had run on the insurance company's subrogated claim, the insured could nevertheless continue his own suit against the tortfeasor. In *Lambert v. Wrensch,* 135 Wis. 2d 105, 399 N.W.2d 369 (1987), this court reaffirmed another of *Heifetz's* holdings, namely that when the statute of limitations barred the insurance company subrogee from asserting the amount owed it, the insured could recover only his share of the total amount the tortfeasor owed; the insured could not recover the insurance company's subrogated claim from the tortfeasor. In both these cases the court held that the insured and the insurance company—each entitled to part of the insured's recovery from the tortfeasor—may pursue separately their shares of the total amount that can be recovered from the tortfeasor. The failure of the insurance company to pursue its share would not affect the recovery of the insured. The results in these cases are

consistent with preserving the insured's rights even though there has been subrogation and at the same time not giving the insured an unjust enrichment.

In this case the question is what amount can the insurance company and the insured together recover from the tortfeasor. The court treats the insured and the insurance company as one person having only one recovery against the tortfeasor for purposes of applying the maximum amount recoverable from the municipality tortfeasor under sec. 893.80(3). The court's decision, in my opinion, rests on an analysis of the interests of the insured and the insurance company: the insured in this case is a person under sec. 893.80(3) seeking damages in an action founded on tort and is entitled to recover up to $50,000; the insurance company is essentially asserting the insured's right to recover damages against the municipality. Because the insurance company as subrogee is merely a substitute for the insured, the majority concludes that the legislature could not have intended the insurance company to be an additional person entitled to recover up to the maximum limit under sec. 893.80(3). For these reasons, I concur in the result.