GERALD WHITBURN, Secretary Department of Health and Social Services
Your predecessor asked my opinion whether certain volunteer physicians are covered as state agents by section 895.46(1)(a), Stats., so as to be entitled to indemnification in case of liability. That statute covers state employes for liability arising from acts "within the scope of employment" and covers agents for acts "within the scope of their agency."
In my opinion the volunteer physicians are not covered as agents by this statute.
The backdrop is that the Department of Health and Social Services (Department) has the responsibility to "carry out a statewide immunization program." Sec. 140.05(16), Stats. The *Page 2 
Department is to undertake a program of public awareness; to design, print, and distribute appropriate reporting and waiver forms; to investigate outbreaks and otherwise maintain surveillance of vaccine preventable diseases; and to provide guidance to parents, physicians, schools and local public health agencies. Wis. Admin. Code § HSS 144.09 (1990). Each local public health agency is responsible to provide the immunization where the Department provides the serum free of charge; the responsibility for making the needed immunization may be transferred from the local public health agency to a school or day care center. Wis. Admin. Code § HSS 144.08 (1990). Every local health agency has a physician-sponsor. If a local health agency has no physician directly on its staff, the agency enters into a written agreement with a private physician whereby the private physician sponsors the local immunization program operated by the agency.
The agents covered by this statute must be distinguished from independent contractors. In some circumstances an independent contractor can be an agent. See Restatement (Second) of Agency
§ 2 at 12, 14 (1958). But the agents under this statute are the common law agents where the master is liable for the torts of the servant under the principle of respondeat superior. To be such an agent, the master must have the right to exercise close control of the details of the work. See Arsand v. City ofFranklin, 83 Wis.2d 40, 45-46, 264 N.W.2d 579 (1978); Kablitz v.Hoeft, 25 Wis.2d 518, 521, 131 N.W.2d 346 (1964).
There are several reasons for concluding that this statute excludes independent contractors and includes only those who are agents in the traditional master-servant sense. First, agents are described in the same sentence of section 895.46(1)(a) as employes; both employes and agents are protected only when acting within the "scope of" their employment or agency. The concepts of protecting employes and those acting in the "scope" are historically identified with agency in the sense ofrespondeat superior and master-servant. See Cameron v. *Page 3 Milwaukee, 102 Wis.2d 448,456-57, 307 N.W.2d 164 (1981). Second, the concepts ofrespondeat superior and master-servant have been applied to employes covered by section 895.46(1)(a). Id. Third, the court of appeals has applied these same concepts to determine that county personnel helping to carry out a state program are not servants for lack of the requisite right of control for respondeatsuperior purposes. Wilmot v. Racine County, 128 Wis.2d 138, 150-51,382 N.W.2d 442 (Ct.App. 1985), reversed on other grounds,Wilmot v. Racine County, 136 Wis.2d 57, 400 N.W.2d 917 (1987). It follows that they are not agents within the meaning of section895.46(1)(a).
In addition, my predecessors in office have consistently administered this statute to protect only those agents over whom the state exercises the right of control in the master-servant sense. Thus, indemnity has been denied to court-appointed guardians-ad-litem and private attorneys appointed by the public defender board to represent the indigent in criminal prosecutions, though a staff attorney performing the same service is protected as a state employe. County judges and district attorneys, prior to becoming state employees, were not regarded as agents of the state for indemnity purposes. The reason for this strict interpretation is that the Legislature intended to substitute this indemnity program for private insurance that covered the state and only those of its employes, officers, and others who effectively were integrated into state government itself, such as by being part of a state pay plan as provided in chapter 20. See generally, 75 Op. Att'y Gen. 49, 50-51 (1986); 75 Op. Att'y. Gen. 43 (1986). Other, informal advice from Department of Justice attorneys is consistent with these conclusions and is footnoted.[1] The alternative to this long-standing *Page 4 
construction would be to finance any independent contractor who helps the state discharge its functions or who acts according to state rules. Highway construction contractors are a case in point. Unquestionably their work is necessary; the state hires them; it inspects their work to assure compliance with state specifications during the course of construction; and the millions of tax dollars paid to the contractors are necessary for the state to discharge its governmental function of facilitating transportation needs. Equally certain, however, is the fact that the contractors are independent contractors who must provide their own liability insurance and hire their own *Page 5 
attorneys when sued; they are not state agents entitled to these services from state government as a matter of statutory right.
I am aware, of course, that there are strong public policy considerations favoring indemnification of the volunteer physicians who participate in this program, especially in view of the fact that our courts have uniformly followed a broad interpretation of the protection afforded by section 895.46. SeeSchroeder v. Schoessow, 108 Wis.2d 49, 69, 321 N.W.2d 131
(1982). However, it is clear that such considerations must be addressed to the Legislature since liberal construction cannot be used as a tool to broaden the coverage of section 895.46.American Motors Corp. v. ILHR Department, 101 Wis.2d 337, 350-51,305 N.W.2d 62 (1981); Sinclair v. H SS Department, 77 Wis.2d 322,332, 253 N.W.2d 245 (1977); Frye v. Angst, 28 Wis.2d 575,582, 137 N.W.2d 430 (1965); Application of Duveneck, 13 Wis.2d 88,92, 108 N.W.2d 113 (1961).
Finally, the legislative history reveals that the Legislature has specifically identified groups it has wanted to include in the indemnity program. Thus, separate legislation was enacted to include the Circus World Museum which is wholly owned and run by the State Historical Society, clearly itself a state agency. See
sec. 895.46(1)(e), Stats.; 75 Op. Att'y. Gen. 182 (1986). Foster parents, for years argued by many to be agents of the Department, were given insurance protections entirely separate from the indemnity program. See sec. 48.627, Stats. And, quite significantly, in 1989 Wisconsin Act 206 the Legislature accorded agency status to some volunteer physicians in connection with a pilot program, but only in Brown and Racine counties. The express inclusion of this limited class of volunteer physicians, without even considering the meaning of the word "agent," itself strongly implies exclusion of these volunteer physicians.
Applying these general principles here, I believe it follows these physicians are not state agents. The Department only structures the overall program. It does not control the conduct *Page 6 
of individual physicians. The physicians are not directly integrated into state government, say by inclusion in a pay plan, by being a subordinate to someone in the executive branch of state government, or by any other similar exercise of procedural control. Rather, they carry out a state program like counties, cities, and schools generally do. They are associated with the local agencies. A case might be made that they are agents of the local units of government, but I feel it would require specific legislative action to make them state agents, just as 1989 Wisconsin Act 206 did for the volunteer physicians in the pilot project in Brown and Racine counties.
Accordingly, I conclude that legislative action would be necessary to make these physicians Department agents for purposes of the indemnity statute.
JED:CDH
[1] Two assistant attorneys general have advised that these physicians are not covered as agents, one advice being dated April 24, 1990, and another on March 19, 1979. The latter concluded that the supervising physicians are not indemnified under section 895.46 because the programs are sponsored by local governmental units or agencies and the role of the Department is only to provide the vaccine and perhaps establish rules and guidelines for the conduct of such programs. On August 26, 1987, your office was advised that physicians and psychologists retained by the Department's Bureau of Social Security Disability Insurance to make disability determinations were not agents, the principal factors being that, although they worked from thirty-five to forty hours a week, they never saw claimants directly; their interactions were mainly with disability examiners; and the decision to grant, deny, or call for more medical information rested with the examiner.
To be contrasted is informal advice of December 17, 1987, that an individual executing a Department order regarding communicable disease under section 143.02(5) is an "agent" within the meaning of section 895.46, since section 143.02(5) specifically referred to the individual as an "agent" and the individual would act to execute an order of the Department. In contrast, under the immunization statute, section 140.05(16), the Department merely provides the vaccines and adopts rules regulating the immunization program. The local public health agencies, not the Department, actually conduct the immunizations.
Another advice memorandum to be contrasted is dated November 21, 1986. It concluded that contract physicians participating in departmental nursing home inspection teams are covered under section 895.46 because their role is governmental and no different than that of department staff serving alongside of them. On the other hand, it also concluded that if a claim rested on such a physician's "exercise of medical expertise . . . the right to indemnification would be doubtful." The role of the physician supervising a local public health agency immunization clinic is much closer to the latter scenario. *Page 7