WISCONSIN PATIENTS COMPENSATION FUND,
Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY COMPANY and CNA Insurance Company, Defendants-Respondents.

Supreme Court

*Nos. 84–087, 84–088. Argued January 2, 1985.—
Decided January 31, 1985.*

(Also reported in 361 N.W.2d 666.)

For the plaintiff-appellant there were briefs by *Peter S. Nelson, Cynthia A. Thompson* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* Appleton, and oral argument by *Peter S. Nelson.*

For the defendants-respondents in 84–087 there was a brief by *Robert R. Studt, Allen A. Arntsen* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* Madison, and oral argument by *Mr. Arntsen.*

For the defendants-respondents in 84–088 there were briefs by *Stanley Gabert* and *Gabert & Williams,* Appleton, and oral argument by *Stanley Gabert.*

Amicus curiae briefs were filed by *Robert W. Larsen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general, on behalf of the Director of Patients Compensation Panels.

LOUIS J. CECI, J.   There are two actions before this court, which have been consolidated for appeal purposes, cases numbered 84–087 and 84–088. These appeals are before us on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats.,[1] and are both

---

[1] Section 809.61, Stats., reads as follows:

"**809.61 Rule (Bypass by certification of court of appeals or upon motion of supreme court).** The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the

from summary judgments of the circuit court for Winne-
bago county, William E. Crane, circuit judge. We affirm
the summary judgments of the circuit court.

These actions both arise out of alleged medical mal-
practice during Lori Gordon's pregnancy in 1979. On
June 3, 1981, Lori and Timothy Gordon filed a submis-
sion of controversy with the patients compensation panel
(panel)[2] against several physicians, including Dr. Pansch
and Dr. Darr, for alleged negligence in managing Lori's
pregnancy and causing the death of the Gordons' al-
legedly viable fetus. Dr. Pansch and Dr. Darr were each
insured under separate policies by the respondent, Conti-
nental Casualty Company (Continental), for up to
$200,000 per claim.[3] Continental was not joined in the
submission of controversy; however, the appellant, Wis-
consin Patients Compensation Fund (Fund), was joined
as the excess insurer for the physicians.[4] The Gordons

supreme court's own motion. The supreme court may refuse to
take jurisdiction of an appeal or other proceeding certified to it
by the court of appeals.''

[2] *See* sec. 655.04, Stats. 1981–82, concerning the requirements
on filing a submission of controversy. (All references to ch. 655,
Stats., in this opinion are to the 1981–82 statutes.)

[3] Liability for medical malpractice is limited under sec. 655.23
(5), Stats., as follows:

"**655.23 Limitations of liability; proof of financial responsi-
bility. . . .**

"(5) While such health care liability insurance, self-insurance
or cash or surety bond approved by the commissioner remains in
force, the health care provider, the provider's estate and those
conducting the provider's business, including the provider's health
care liability insurance carrier, are liable for malpractice for no
more than $200,000 per claim and $600,000 per year or the
maximum liability limit for which the provider is insured, which-
ever is higher, if the health care provider has met the require-
ments of this chapter.''

[4] Section 655.27(1), Stats., provides in pertinent part,

"**655.27 Patients compensation fund. (1)** FUND. There is cre-
ated a patients compensation fund for the purpose of paying

also filed an action in the circuit court for Winnebago county against Continental as primary insurer of Dr. Pansch and Dr. Darr for their claims of damage.

A settlement was reached with the Gordons for all of their claims before the submission of controversy was actually heard by the panel. The entire case was settled for the sum of $1,000,000, of which $975,000 was allocated to the individual claims of Lori and Timothy Gordon and $25,000 was allocated to the claim of the fetus. Continental, while denying liability, contributed the $200,000 limit pursuant to its policy covering Dr. Pansch toward the $975,000 settlement figure. Continental denied any causal negligence of Dr. Pansch with respect to the claim of the fetus and refused payment for that claim. Continental also refused any settlement on behalf of Dr. Darr. The $800,000 balance of the settlement amount was paid by the Fund.

The Fund subsequently obtained a settlement stipulation in the panel proceeding signed by the attorneys for the Gordons, Dr. Pansch, and the Fund, stating that the Gordons' cause of action against Dr. Pansch and the Fund was dismissed on its merits with prejudice. The stipulation reserved any claim for contribution, subrogation, or indemnification that Dr. Pansch or the Fund may have against Dr. Darr. The Fund also obtained a release from the Gordons and an assignment of their claims.

The panel chairman issued his findings and order on December 30, 1982. The chairman reasoned that if the matter had proceeded before the panel, there may have been an assignment of negligence to the physicians. However, the matter was settled, and contribution should have been decided at the time of settlement. The chair-

that portion of a medical malpractice claim which is in excess of the limit expressed in s. 655.23(5) and paying future medical expense periodic payments under s. 655.015."

man dismissed the panel proceedings, holding that the panel lacked jurisdiction to decide issues of contribution once settlement has been reached. The findings and order of the panel were never appealed.

Continental moved to dismiss the Gordons' circuit court action against Continental on February 21, 1983. The Fund then moved to amend the complaint to substitute itself in the place of the Gordons on the basis of the earlier executed assignment. The circuit court orally denied the Fund's motion to amend the complaint and granted Continental's motion to dismiss on May 16, 1983. The circuit court's written order was entered on May 25, 1983. This order was never appealed.

The two actions involved in this appeal were both filed by the Fund against Continental as a primary insurer on May 16, 1983, in the circuit court for Winnebago county. Case number 84–087 was brought against Continental as the primary liability insurer of Dr. Darr. That action alleges that the Fund paid $775,000 in settlement for the individual claims of Lori and Timothy Gordon. Therein, the Fund seeks contribution from Continental up to the policy limits of $200,000 if the negligence of Dr. Darr is found to have been a cause of the injury to the Gordons. Case number 84–088 was brought against Continental as the primary liability insurer of Dr. Pansch. That action alleges that the Fund paid the Gordons $25,000 in settlement for the claim of the alleged viable fetus and in return that the Gordons assigned the fetus's claim to the Fund. In that case, the Fund seeks recovery of the $25,000 as an assignee of the fetus's claim if the negligence of Dr. Pansch is found to have caused the death of the Gordons' fetus.

Continental moved to dismiss both actions, and the motion was granted in an oral decision on November 21, 1983, by William E. Crane, circuit judge for Winnebago county. The trial court ruled that these cases were medical malpractice cases and that the court lacked juris-

diction because they had not been properly resolved by the panel prior to commencement of the actions. Second, the trial court ruled that if the panel order dismissing the submission of controversy was erroneous, the Fund should have appealed the order within the statutorily prescribed 120-day time period.[5] Judgments were subsequently entered dismissing the complaints in both actions.

The issues presented for review are:

(1) Whether the circuit court has jurisdiction over an action initiated by the patients compensation fund, as an excess insurer, against the primary liability insurer of a health care provider for contribution as a result of a settlement with an injured patient when the contribution claim has not been previously submitted to a panel under ch. 655, Stats.; and,

(2) Whether the circuit court has jurisdiction over an action initiated by the patients compensation fund, as an assignee of a medical malpractice claim, against the primary liability insurer of a health care provider for payment of its proper share of the damages when the claim between the Fund and the insurer has not been previously submitted to a panel under ch. 655, Stats.

Generally, no court action for injuries arising from a medical malpractice claim may be brought until the matter has been reviewed by a ch. 655 patients compensation panel. Sec. 655.04(1)(b), Stats. Therefore, the precise issue here is whether the actions involved in this appeal are claims "on account of malpractice" as de-

---

[5] Section 655.19, Stats., requires in part,

"655.19 **Court trial.** Unless the parties have stipulated in writing under s. 655.07 to be bound by the panel determination, any party to a panel hearing may, within 120 days after the date of an order made by a panel, commence an action for a trial in the circuit court for the county designated in the submission of controversy under s. 655.04."

fined in ch. 655, sec. 655.007.[6] This issue presents a question of statutory interpretation, which is a question of law. As to questions of law, we need not give special deference to the determination of the circuit court. *Patients Fund v. St. Paul Ins. Co.,* 116 Wis. 2d 537, 539, 342 N.W.2d 693 (1984).

The dispute in this case arises from an apparent inconsistency in ch. 655, Stats. The Fund argues that the panel does not have the power to resolve issues of contribution or the extent of an insurer's liability because ch. 655, deals only with claims between patients[7] or the patients' representatives[8] and health care providers.[9] For example, sec. 655.005 (1) (a), provides,

---

[6] Section 655.007, Stats., provides,

"655.007 **Patients' claims.** On and after July 24, 1975, any patient or the patient's representative, having a claim for injury or death on account of malpractice is subject to this chapter."

[7] "Patient" is defined in sec. 655.001(10), Stats., as "an individual who received or should have received health care services from a health care provider."

[8] "Representative" is defined in sec. 655.001(12), Stats., as "the personal representative, spouse, parent, guardian, attorney or other legal agent of a patient."

[9] "Health care provider" is defined in sec. 655.001(8), Stats., as "a medical or osteopathic physician or podiatrist licensed under ch. 448; a nurse anesthetist licensed or registered under ch. 441; a partnership comprised of such physicians, podiatrists or nurse anesthetists; a corporation owned by such physicians, podiatrists or nurse anesthetists and operated for the purposes of providing medical services; an operational cooperative sickness care plan organized under ss. 185.981 to 185.985 which directly provides services through salaried employes in its own facility; a hospital as defined by s. 50.33(1)(a) and (c); or a nursing home as defined by s. 50.01(3) whose operations are combined as a single entity with a hospital subject to this section, whether or not the nursing home operations are physically separate from hospital operations. It excludes any state, county or municipal employe or federal employe covered under the federal tort claims act, as amended, who is acting within the scope of employment, and any facility exempted by s. 50.39(3) or operated by any governmental agency, but any state, county or municipal employe

"On and after July 24, 1975, every *patient,* every *patient's representative* and every *health care provider* shall be conclusively presumed to have accepted to be bound by this chapter." (Emphasis added.)

Similarly, sec. 655.007, requires,

"On and after July 24, 1975, any *patient* or the *patient's representative,* having a claim for injury or death on account of malpractice is subject to this chapter." (Emphasis added.)

Finally, sec. 655.04 (1) (a), states in part,

"(1) FILING. (a) On and after July 24, 1975, any *patient* or the *patient's representative,* having a claim under this chapter for bodily injury or death, on account of a tort or breach of contract based on professional services rendered or which should have been rendered by a *health care provider,* may, after payment of the fee under sec. 655.14, file a submission of controversy with the director in accordance with this chapter." (Emphasis added.)

The Fund reasons that its claims against Continental are not covered by ch. 655 because the Fund is precluded from filing a submission of controversy under sec. 655.04 (1) (a).

In contrast, Continental directs our attention to the statutorily defined powers of the panel under sec. 655.-065 (1), Stats., which requires in part,

"(1) FINDINGS. Each panel, whether formal or informal, *shall* determine the following:
"(a) Whether the actions or omissions of the health care provider were negligent.
"(b) If such actions or omissions were negligent, whether the negligence caused injury or death to the patient.

---

or facility so excluded who would otherwise be included in this definition may petition in writing to be afforded the coverage provided by this chapter and upon filing the petition with the commissioner and paying the fee required under s. 655.27 (3) will be subject to this chapter."

"(2) COMPENSATORY AWARDS. (a) If the panel determines that a claimant has suffered damage from the death or bodily injury of another, the panel *shall* award compensation and benefits." (Emphasis added.)

*See also, State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 500, 261 N.W.2d 434 (1978).

Continental asserts that the language of sec. 655.065, Stats., is mandatory and in cases where the negligence of a health care provider is in question, the panel must make a finding before any action can be taken in circuit court. Continental states that in case number 84–087, the Fund, as an excess insurer of Dr. Pansch, seeks contribution from the primary insurer of Dr. Darr. The Fund's recovery for contribution is solely dependent upon a finding of causal negligence on the part of Dr. Darr, who is not a party to this action.[10] Continental relies on the derivative nature of the Fund's claim, citing *Loy v. Bunderson,* 107 Wis. 2d 400, 320 N.W.2d 175 (1982), where we held,

"An insurer is directly liable to the plaintiff *if the underlying conditions of negligence are satisfied* although, after commencement of the action, the insured is released or protected by an absolute covenant not to sue. *The responsibility of an insurance company to an injured party is derivative of the insured's conduct,* but it is not derivative of the status of the insured's personal liability to a plaintiff at the time the insurer's contractual obligations are triggered by a judgment for damages." *Id.,* 107 Wis. 2d at 426. (Emphasis added.)

Continental maintains that this action is not really a dispute between two jointly liable insurers (the Fund

---

[10] *See generally, Giese v. Montgomery Ward, Inc.,* 111 Wis. 2d 392, 404, 331 N.W.2d 585 (1983), where we held that in order to have a claim for contribution, both parties must be joint negligent wrongdoers, they must have common liability because of such negligence to the same person, and one party must have borne an unequal proportion of the common burden.

and Continental) as the Fund suggests, but, rather, a dispute between two jointly liable, albeit insured, doctors (Drs. Pansch and Darr) concerning their relative responsibility for injuries arising from their alleged medical malpractice. As such, Continental argues that case number 84–087 is subject to ch. 655.

Similarly, in case number 84–088, the Fund, as an assignee, seeks to recover payment from a policy issued by the primary liability insurer of Dr. Pansch. The Fund's recovery in this case is solely dependent upon a finding of causal negligence on the part of Dr. Pansch, who also is not a named party in this case. Continental believes that the Fund is standing in the shoes of the Gordons and, as such, case number 84–088 is actually a medical malpractice action to determine if the negligence of Dr. Pansch was a cause of the death of the Gordons' fetus. Therefore, case number 84–088 is also subject to ch. 655, Stats.

In comparing the position taken by the Fund with that taken by Continental, we see that there is an ambiguity in ch. 655. On one side, it is argued that the Fund is not governed by ch. 655 because it does not qualify as a "patient," "patient's representative," or "health care provider." However, both of the claims against Continental are dependent upon a finding of causal negligence of either Dr. Darr or Dr. Pansch, and sec. 655.065, Stats., mandates that the panel make such a finding.

To resolve this conflict, we turn to the rules of statutory construction, where we have said,

"The rules of statutory construction are well established. 'First and foremost among them is the rule that the purpose of engaging in statutory interpretation is to ascertain and give effect to the intent of the legislature.' . . . 'In determining legislative intent, first resort is to the language of the statute itself. If the meaning of the statute is clear on its face, this court

will not look outside the statute in applying it.' . . . 'When the language of a statute is ambiguous or unclear, this court will examine the scope, history, context, subject matter and object of the statute in order to discern the intent of the legislature. . . . One further principle which must direct the court in construing a statute is that the court must interpret it in such a way as to avoid an absurd or unreasonable result.' " *Sacotte v. Ideal-Werk Krug & Priester Machinen-Fabrik,* 121 Wis. 2d 401, 406, 359 N.W.2d 393 (1984).

The legislative intent underlying ch. 655's enactment has been set forth in 1975 Wis. Laws, ch. 37, sec. 1.[11]

---

[11] 1975 Wis. Laws, ch. 37, reads in pertinent part as follows:

"SECTION 1. **Legislative findings.** (1) The legislature finds that:

"(a) The number of suits and claims for damages arising from professional patient care has increased tremendously in the past several years and the size of judgments and settlements in connection therewith has increased even more substantially;

"(b) The effect of such judgments and settlements, based frequently on newly emerging legal precedents, has been to cause the insurance industry to uniformly and substantially increase the cost and limit the availability of professional liability insurance coverage;

"(c) These increased insurance costs are being passed on to patients in the form of higher charges for health care services and facilities;

"(d) The increased costs of providing health care services, the increased incidents of claims and suits against health care providers and the size of such claims and judgments has caused many liability insurance companies to withdraw completely from the insuring of health care providers;

"(e) The rising number of suits and claims is forcing both individual and institutional health care providers to practice defensively, to the detriment of the health care provider and the patient;

"(f) As a result of the current impact of such suits and claims, health care providers are often required, for their own protection, to employ extensive diagnostic procedures for their patients, thereby increasing the cost of patient care;

"(g) As another effect of the increase of such suits and claims and the costs thereof, health care providers are reluctant

One apparent goal behind this chapter is the speedy resolution of disputes. We recognized in *Strykowski,* 81 Wis. 2d at 508, that,

". . . . resolution of a malpractice claim under the traditional tort litigation process has been found to require an average of nineteen months. A patients compensation panel, on the other hand, must render a decision within 150 days after the submission of controversy is filed. Sec. 655.04(4)(a), Stats." (Footnote omitted.)

Furthermore, we just recently concluded,

"It appears clear to us that when the legislature enacted ch. 655, it contemplated a procedure which would protect health care providers and patients from the hazards of the traditional lengthy tort litigation." *Northwest General Hospital v. Yee,* 115 Wis. 2d 59, 64, 339 N.W.2d 583 (1983).

An integral function of the panel is to screen medical malpractice controversies so as to expedite settlement, "weed out" frivolous actions, and secure early disposition of claims. *Strykowski,* 81 Wis. 2d at 523. To aid in this screening process, the statutes generally require that health care providers sit on the panels. *Compare,* sec.

to and may decline to provide certain health care services which might be helpful, but in themselves entail some risk of patient injury;

"(h) The cost and the difficulty in obtaining insurance for health care providers discourages and has discouraged young physicians from entering into the practice of medicine in this state;

"(i) Inability to obtain, and the high cost of obtaining, such insurance has affected and is likely to further affect medical and hospital services available in this state to the detriment of patients, the public and health care providers;

"(j) Some health care providers have curtailed or ceased, or may further curtail or cease, their practices because of the nonavailability or high cost of professional liability insurance; and

"(k) It therefor [*sic*] appears that the entire effect of such suits and claims is working to the detriment of the health care provider, the patient and the public in general."

655.03(1), Stats., with sec. 655.03(2). The expertise of these medically trained panel members provides an advantage to the panels that the courts do not necessarily have. Due to the unique composition of the panels, the panels are generally in a better position to effectively and efficiently determine the types of questions that commonly arise in medical malpractice actions.

After reviewing the purpose and function of the panel system, we come to the conclusion that the legislature intended that ch. 655 cover actions arising from medical malpractice claims brought by the Fund as an excess insurer for either contribution or for payment of an insurer's proper share of damages. The underlying factual issues in these cases concern medical malpractice and, therefore, should be heard by the panel. The effect of holding otherwise is to allow the circuit court in this case to conduct an entire medical malpractice trial (except for the issue of damages) to determine the issue of liability of Drs. Darr and Pansch. Such action would undermine the protections afforded by ch. 655 and the purpose of the panel system, as discussed above.

Both of the actions involved in this appeal are predicated upon medical malpractice, and no action can be taken by the circuit court until ch. 655 has been fully complied with. As explained above, recovery in case number 84–087 is dependent upon a finding of causal negligence on the part of Dr. Darr, and recovery in case number 84–088 is dependent upon a finding of causal negligence on the part of Dr. Pansch.

The Fund argues that if this court holds that the panel should have heard these cases prior to commencement of an action with the circuit court, then we should remand the actions back to the panel for its determination. The Fund's reliance upon *Mortenson v. Miller*, 99 Wis. 2d 209, 298 N.W.2d 546 (1980), and *Maluka v. Tucker*, 117 Wis. 8d 1, 343 N.W.2d 407 (Ct. App. 1983), is misplaced because in those cases, the controversy had been

submitted to the panel within the time period limited by law, and jurisdiction was obtained by the circuit court. The contrary is true, however, in the cases at hand, and, therefore, we have no jurisdiction to remand the cases to the panel.

In conclusion, we hold that the circuit court lacks jurisdiction over case numbers 84–087 and 84–088 because ch. 655 has not been complied with. Proper action by the Fund in this case would have been to appeal the panel's findings and order dated December 30, 1982, which dismissed the remaining contribution issues concerning Dr. Darr. The panel incorrectly held that it lacked jurisdiction to decide issues of contribution. Section 655.065 (1) and (2), Stats., mandates that the panel *shall* make a finding of negligence, causation and damages and that in awarding damages,

"Each health care provider shall have a right of comparative contribution or indemnity in accordance with the laws of this state." Sec. 655.065 (2) (b).

We, therefore, affirm the trial court's summary judgments in case numbers 84–087 and 84–088.

*By the Court.*—The summary judgments of the circuit court are affirmed.